# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

MICHAEL HALE,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.

OPINION AND ORDER

15-cv-478-wmc

Pursuant to 42 U.S.C. § 405(g), plaintiff Michael Hale seeks judicial review of a final decision of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, which denied her application for Social Security Disability Insurance Benefits and Supplemental Security Income. The court held a hearing on Hale's appeal at which the parties appeared by counsel. Plaintiff raises several challenges. Because the court finds that the ALJ failed to give sufficient weight to Hale's treating physician Dr. Voelker and provide an adequate explanation for discounting Hale's credibility, particularly as to his claimed limitations with respect to migraine headaches, the court will reverse the Commissioner's determination and remand for further proceedings consistent with this opinion.

## BACKGROUND

### A. Overview of Claimant

Hale was 26-years-old at the alleged onset date, 27 at the time he applied for benefit, and 33 at the time of the second hearing. (This case was previously remanded due to the ALJ's failure to adequately account for Hale's limitations in concentration, persistence and pace in creating an RFC.) He has an eleventh grade high school education, is able to

communicate in English, and has past work experience as a stocker, an unskilled job performed at the medium exertional level. Hale testified at his hearing that he last worked in March of 2009 as a stocker at Wal-Mart, and that he was fired because he took too long of a break. He claims disability based on a multitude of physical and mental health impairments, but primarily focuses on migraines and anxiety/agoraphobia.

### B. Medical Record

#### i. Medical Records Predating Alleged On-set Date

Plaintiff's medical record is extensive, with notes dating back to 2003, six years prior to his alleged on-set date of March 26, 2009. Those records reveal repeat emergency room and urgent care visits for headaches, including with symptoms of photo and phonophobia, as well as October 2008 appointments with his treating physician Thomas A. Voelker, M.D., for migraine headaches. (AR 306-27 (Oct. 2003 ER visit); AR 421-29 (Dec. 2008 to Mar. 2009 urgent care visits); AR 400-08 (Oct. 2008 Voelker visit).) At that time, Voelker, noted that Hale was "missing a few days of work every month, gets migraines 3 or 5 times a month." (AR 401.)

In August 2006, Hale saw Richard Hadfield, M.S. one time for an evaluation of his mental health. Hadfield diagnosed Hale with a mood disorder, anxiety disorder, personality disorder, migraine headaches, poor work history, financial stressor, conflictual relationship with stepfather, and gave him a GAF score[1] at time of discharge of 53. (AR

---

[1] "The Global Assessment of Functioning (GAF) is a numeric scale used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of an individual, e.g., how well one is meeting various problems-in-living. The scale is presented and described in the DSM-IV-TR on page 34, using a scale from 100 (extremely high functioning) to 1 (severely impaired)." "GAF," Wikipedia. The following ranges are material to Hale's appeal:

382.) The medical record also contains an August 2007 disability report by Rachel, Pallen, Ph.D. Pallen diagnosed him with "panic disorder with agoraphobia; depressive disorder, NSO; hip and knee problems" and listed Hale's GAF score as 75. She also described his prognosis as somewhat poor because it "does not appear that Michael has motivation to engage in employment," but found that he "has the ability to understand, remember and carry out simple instructions," and that his "ability to maintain concentration and attention" and "maintain adequate work pace" are all "good." (AR 388-94.)

    ii.    **Medical Records Post-dating Alleged On-Set Date to Date Last Insured**

Hale's date last insured was March 30, 2012, though this appeal also seeks review of the denial of his supplemental insurance benefits. On April 24, 2009, Hale again saw his long-time treating physician Dr. Voelker. In that medical record, Voelker described Hale's history of headaches for years, noted that he experiences them about every day, that they are usually fairly severe, focused on the left side, though notes that Hale denies any numbness or tingling, has no clear aura, and that there are no associated neurologic

---

    61 – 70 Some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

    51 – 60 Moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

    41 – 50 Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work).

symptoms. Voelker also noted that Hale wanted to avoid narcotics. Voelker prescribed Diclofenac and told Hale to call in the next week or so if not improving, and indicated that he would order an x-ray and a possible MRI scan. (AR 396-97; AR 409-412.) Voelker further noted that Hale did not have insurance at that time, but is applying for SSI disability. (AR 410.)

In November 2009, Hale had an intake evaluation with Barbara Schvetz, MSW. Hale indicated that he is applying for disability and that it would be helpful for him to have a current diagnosis. For diagnostic impression, Schvetz noted that Hale suffered from a panic disorder with agoraphobia, social phobia, ADHA, mood disorder, migraines and described his GAF as 51, and that he had a GAF of 49-53 in the past year. (AR 530-33.) The record also contains a December 2009 treatment note from Schvetz noting a panic attack at Wal-Mart and depression. (AR 534.)

In addition to those notes, the medical record also contains urgent care and ER visits for recurrent back pain, though a 2009 CT scan of his spine was normal. (AR 413-20, 479-93, 529, 586-602.)

iii. Medical Records Post-Dating Date Last Insured

In May 2012, Hale had several appointments with Dr. Voelker, for treatment of migraines, agoraphobia, anxiety and depression. Dr. Voelker changed several of his prescriptions and noted a plan for Hale to see a psychiatrist. (AR 774, 778.) A May 2012 x-rays of cervical spine were unremarkable. (AR 797-800.)

In October 2012, Hale saw Timothy P. Wogahn, a new treating physician for follow-up care of his chronic back pain. (AR 770.) A November 2012 MRI showed no abnormalities: "unremarkable exam of thoracic spine, with exception of incidental note

made of Schmorl's nodes." (AR 791-92.) Hale saw Wogahn against in February 2013 to establish care and refill prescriptions. (AR 765-69.) In July 2013, Dr. Wogahn treated Hale for a sunburn, chronic back pain, depression, anxiety and migraines. Dr. Wogahn increased his medication for depression, changed his migraines medication, referred him to physical therapy, and advised him to follow-up in six to eight weeks. (AR 763-64.) Hale saw Dr. Wogahn again in September 2014 visit to review prescriptions. At that time, Hale noted that he did not believe Effexor was working for his depression. During that appointment, he also complained of back and right knee pain and migraines. Dr. Wogahn refilled prescriptions, and indicated a plan to wean Hale off Effexor. (AR 755-57.)

    iv.    **Reports of Consulting and Examining Medical Providers**

Several medical providers have reviewed Hale's medical record and/or examined Hale for purposes of his SSI application.

In a September 8, 2009, record review report, Evelyn F. Adamo, Ph.D. reviewed medical records from June and July 2009. She checked the boxes for "no medically determinable impairment" and "coexisting nonmental impairment(s) that requires referral to another medical specialty." Adamo also noted a lack of mental health treatment, and that "medical sources fail to describe a mental disorder." (AR 495-507.)

In a September 9, 2009, record review, F. Malek, M.D., reviewed records of Hale's chronic back pain. Malek concluded that "it appear that claimant suffered from lumbar sprain. He had admitted that the pain was getting better with medications, therefore it is reasonable to conclude that his back pain impairment is severe but expected to improve within 12 months of AOD." (AR 508-09.)

Around that same time, in a September 10, 2009, physical RFC assessment, E. Layne, M.D., reviewed his medical records, and concluding that there were no limitations except for certain environmental limitations to avoid triggering headaches. Layne also noted that the headache impairment does not meet or equal a listing. (AR 510-18.)

In February 2010, Richard Hurlbut, Ph.D., conducted a mental status evaluation. Based on the examination, he concluded that Hale "would have no problem with simple instructions, but would have a great deal of difficulty getting along with supervisors and coworkers. He would have difficulty with concentration, attention, and work pace and difficulty with stress and change." He also noted that Hale showed "constant anxiety" during the evaluation. Hurlbut also interviewed Hale's fiancée. Hurlbut diagnosed Hale with agoraphobia, ADD, major depression, recurrent, severe, nonpsychotic, migraines, body pain from past injuries, and listed his GAF as 40-45. (AR 539-43.)

A March 18, 2010, physical RFC by Janis Byrd, M.D., noted no limitations except for avoiding all exposure to hazards. In forming her opinion, Byrd reviewed his ER records and discounted his report that he has migraines five to seven times per week, lasting five to 24 hours, stating, "if accurate, this would seem to be most of the time. There is no evidence of an underlying disorder, and no corroboration of this level of frequency and duration." Byrd also concluded that "no back severity established." (AR 544-51.)

In a March 18, 2010, mental health RFC by Beth Jennings, Ph.D., she indicated that Hale was not significantly limited or moderately limited. In forming her opinion, Jennings noted,

> mental health problems are more than not severe. However, functionally, he is maintaining an engagement, cares for his future mother in law a few hours a day, cooks multiple times a

> day, grocery shops with assistance, does daily chores with reminders and, according to both the claimant and his grandmother, has panic attacks 'sometimes' when he goes into public (which I take to mean not always). He would have moderate difficulties with social interactions and would do best in a job with limited to no public contact. . . . Claimant is found to be credible.

(AR 552-54.) She also completed a psychiatric review technique, noting organic mental disorders, and anxiety-related disorders, and also noted panic disorder with agoraphobia. In evaluating the "B" criteria, she check moderate for restriction of activities of daily living and difficulties in maintaining social functioning, and mild for difficulties in maintaining concentration, persistence or pace, with no episodes of decompensation. (AR 555-67.)

Finally, in an April 2010 RFC questionnaire completed by Hale's treating physician Dr. Voelker, Voelker noted his first contact in September 1989 with "off and on [contact] through the years." Voelker indicated that he had seen Hale on eight occasions for headaches over those years, that the headaches were typically on the left side, usually fairly severe, often associated with nausea and vomiting, and usually occurred daily. Voelker reported that he never suspected that Hale was a malingerer, and that he expected the headaches to be lifelong given Hale's history and the fact that he has not had a good long-term response to medication. With respect to work, Voelker concluded that Hale would need to take breaks about three to four times per month, which the court interprets to mean that he would miss work three to four times per month. (AR 568-79.)

### C. ALJ's Decision

The ALJ held a hearing on remand from this court on April 17, 2015, and issued an opinion dated June 1, 2015. The ALJ concluded that Hale was not disabled from March 2009 until the date of the opinion. (AR 606-07.)

The ALJ found the following severe impairments: migraine headaches, affective disorder and an anxiety disorder. (AR 608.) In making this determination, the ALJ determined that several impairments -- GERD, Eustachian dysfunction and sinusitis, right knee disorder, cervical radiculopathy and back pain -- were not severe. (AR 609.) Hale mentions back pain in his brief in support of his appeal, but does not directly challenge the ALJ's finding that his episodic back pain is not severe.

At step 3, the ALJ concluded that Hale does not have an impairment or combination of impairments that meet or equal a listing. (AR 610.) In making this determination, the ALJ considered whether Hale's migraines met Listing 11.03, but concluded that they do not, mostly because of a lack of treatment (with narcotic medication) and the fact that the "state agency neurological medical consultants nor any other medical source" determined that they did not meet the listing. (*Id.*) The court further determined that Hale's mental impairments do not meet a listing because he has at most moderate limitations with no repeated episodes of decompensation. (AR 611.) In making this finding, the ALJ discounted Hale's credibility, finding that his reports of "panic attacks, poor concentration and attention, and not leaving the house are not consistent with the other evidence. The claimant shops, goes to appointments, goes fishing and bird watching, rents and plays video games, uses the computer daily, reads novels, and can perform daily personal care and other activities." (AR 612.)

The ALJ's RFC limited him to medium work with additional limitations. "He is precluded from performing work around hazards, such as unprotected heights and dangerous machinery; excessive noise; or extreme temperatures. The claimant is limited to unskilled work involving simple, routine, tasks that are consistent from day-to-day with

8

minimal, if any (meaning less than ten percent of the workday), changes in work tasks or work settings and no fast-paced production line tasks. Although others, including coworkers, supervisors and the public, may be in the vicinity of the individual's workstation, the claimant's assigned tasks must be performed primarily alone, with no direct interaction with the public, and only occasional interaction with coworkers and supervisors. The claimant needs regular breaks, but may be off task up to ten percent of the workday, while at the workstation." (AR 612.)

In crafting the RFC, the ALJ found Hale's "statements concerning the intensity, persistence and limiting effects of these symptoms [to be] not entirely credible." Specifically, the ALJ discounted Hale's reports of migraines because: (1) he had them since childhood and was able to attend school and work at Wal-Mart as a stocker for 18 months; (2) there was no basis for finding that his headaches worsened since then; and (3) the lack of medical treatment undermines Hale's credibility, even with crediting his testimony that he lacked health insurance from 2009 to 2012. (AR 613-14.) Oddly, the ALJ then described Hale's medical treatments in 2013 and 2014, including use of medication to control migraines. (*Id.*)

The ALJ also reviewed the various medical opinions. She placed some weight on the state agency medical consultant neurologist Edward D. Layne, M.D.'s conclusion that the headaches did not meet or equal any listing. The ALJ attempted to avoid headache triggers in crafting the RFC, but found that the record does not support Hale's claim that the frequency and intensity of his headaches would preclude all work activities. (AR 615.) She placed great weight on the March 2010 report of state agency medical consultant Janis Byrd, M.D., and incorporated her restrictions into the RFC. (AR 615.)

Critical to Hale's appeal, she placed little weight on the opinion of claimant's treating physician, Thomas Voelker, M.D., finding that claimant's treatment relationship with Voelker was intermittent and Voelker's opinion was "largely based on the claimant's subjective reports of his symptoms," and was "not consistent with medical evidence, including [Voelker's] own treatment notes." (AR 615.)

As for Hale's mental health limitations, the ALJ was overall critical of Hale's lack of treatment. In her report, she stated that she understood the difficulty in establishing care with a psychiatrist, but still concluded that it does not account for infrequent treatment with primary care physician. (AR 616.) (Despite this criticism, the ALJ reviewed medication Hale had tried.) The ALJ placed little weight on the February 2010 consultative examination with Richard Hurlbut, Ph.D., and his diagnoses of "agoraphobia, ADD and depression" and a GAF score of 40-45, indicative of serious symptoms, because "it is inconsistent with the other GAF scores in the record from treating sources, mental status examination, as well as the claimant's limited treatment during the entire period at issue." (AR 616, 617.) She also placed little weight on Rachel J. Pallen, Ph.D.'s 2007 consultative examination because it occurred two years before onset date. She similarly, discounted treatment notes from 2006 with GAF scores. (AR 616.) The ALJ also placed no weight on the 2009 state medical consultant Evelyn F. Adamo, Ph.D.'s report that Hale's mental health symptoms did not amount to a medically determinable impairment. (AR 616.) Finally, the ALJ placed some weight on the 2010 report of state agency medical consultant Beth Jennings, Ph.D.'s opinion, "consistent with the medical evidence of record." (AR 616-17.)

The ALJ concluded that the claimant is unable to perform his past relevant work because of certain aspects of his RFC, but concluded that he could perform other work of other representative occupations such as kitchen cleaner, sweeper cleaner, and order filler. (AR 617-18.)

OPINION

Hale raises four challenges on appeal, two of which are related to his first appeal and two of which are new: (1) despite the ALJ's determination that Hale had moderate limitations in concentration, persistence and pace ("CPP"), she provided a flawed hypothetical question; (2) the ALJ's finding of only a moderate limitation in CPP was in error, and specifically she erred by failing to give appropriate weight to the consultative examiner, Dr. Hurlbut; (3) the ALJ's credibility finding is flawed; and (4) the ALJ erred by not giving sufficient weight to the option of Dr. Voelker.[2] The court will address each in turn.

## I. Flawed CPP Hypothetical

Hale first picks up on the core theme in the last appeal and the basis for remand -- that the ALJ failed to consider his impairment in CPP in crafting an RFC, or failed to adequately explain how the RFC limitations adequately address his CPP issues. In support

---

[2] During the hearing, the court questioned the parties as to whether the limited scope of the remand permitted the ALJ to consider Hale's migraines, and whether Hale was precluded from bringing challenges relating to his migraines in the second appeal, since that issue was not raised in his first appeal. The court directed the parties to brief these issues. Having now reviewed the supplemental filings (dkt. ##12, 13), the parties agree that on remand, the ALJ may address any issues related to the claim, and that Hale was not required to raise an issue in the first appeal to preserve it for this second appeal. Still, for efficiency's sake, the court would encourage counsel for plaintiff to raise all viable issues, rather than have a piecemeal remand and appeal process.

11

of this argument, Hale relies on the standard CPP reversal cases, in which courts have founds that limiting a claimant to simple, routine work does not necessarily address a CPP impairment. (Pl.'s Br. (dkt. #9) 18-19.) Here, however, the ALJ included other limitations in the RFC, namely limiting Hale to "tasks that are consistent from day-to-day with minimal, if any (meaning less than ten percent of the workday), changes in work tasks or work settings and no fast-paced production line tasks," and also providing "regular breaks, but may be off task up to ten percent of the workday, while at the workstation." Hale persists that these limitations "by logic and law, do not address CPP" (Pl.'s Br. (dkt. #9) 24) but fails to provide any explanation to develop this argument. From the court's review, placing restrictions as to consistency of tasks, speed of work and requiring breaks do address a CPP limitation, or at least the court finds no error in the ALJ's approach.

Curiously, plaintiff also argues that the RFC and hypothetical posed to the VE were flawed because the ALJ provides the same restrictions, regardless of the underlying cause of the CPP limitation, compiling a chart of this ALJ's decisions. (Pl.'s Reply (dkt. #11) 4-6.) This argument is nonsensical. There is no reason why an ALJ would be required to craft different restrictions based on the underlying cause of the CPP limitation. The proper focus is on the limitation itself, not on the cause. The court finds no error in the ALJ's description of Hale's restrictions due to his CPP limitation.

## II. Finding of Only a Moderate Limitation in CPP

Related to his first challenge, Hale also argues that the ALJ erred in finding that he only has moderate (as opposed to marked) limitations in CPP. Specifically, Hale argues that the ALJ failed to reconcile adequately her conclusion of moderate limitations with the

opinions of Barbara Schvetz, MSW, and Dr. Hurlbut. Hale focuses primarily on Hurlbut's assessment of Hale's GAF as a 40 to 45, which Hale argues would equate to a marked impairment under 20 C.F.R. Subsection P, Appendix 1, Listing 12.00C. (Pl.'s Br. (dkt. #9) 14.) As described above, the ALJ placed little weight on Hurlbut's consultative examination report because "it is inconsistent with the other GAF scores in the record from treating sources, mental status examination, as well as the claimant's limited treatment during the entire period at issue." (AR 616, 617.) In support of this argument, Hale points out that another treatment provider, Barbara Schvetz, MSW, determined Hale's GAF score to be 51 (note, this score technically falls within the "moderate," not "serious" range), and that the state agency consultative psychologist found Hale to be "credible." (Pl.'s Br. (dkt. #9) 34.)

In response, the Commissioner directs the court to a Seventh Circuit case, finding that the ALJ reasonably relied on a narrative opinion of a state agency psychologist, rather than a GAF score, explaining "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted).[3] Perhaps more compelling, putting aside the GAF score, the government contends that Hurlbut did not opine that Hale had marked limitations in CPP or would be off task more

---

[3] The Commissioner also cites to comments on changes to regulations concerning revised medical criteria for evaluating mental disorders in support. (Def.'s Opp'n (dkt. #10) 13.) The citation, however, does not provide the support claimed. Instead, if anything, the response to comments appear to embrace consideration of GAF scores. 65 Fed. Reg. 50746, 50764-65 (2000) ("Psychological testing should not be ignored or dismissed as being of lesser value to the disability evaluation process than any other relevant and available evidence. The results of well-standardized psychological tests can provide valid and reliable data useful to the disability evaluation process.").

13

than ten percent per day. While Hurlbut reports that Hale would have "difficulty with concentration, attention and work pace," the Commissioner is correct that Hurlbut does not quantify this difficulty in a meaningful way. The bulk of the report is simply his summary of Hale's responses to questions. His analysis, explaining his opinion with respect to specific work capacity issues is quite thin. Even if the ALJ erred in placing little weight on Hurlbut's opinion, absent the GAF score, Hurlbut's opinion fails to provide a basis for upending the ALJ's finding of moderate CPP impairment and the RFC limitations addressing this impairment. Accordingly, the court rejects this challenge as well.

### III. Credibility Finding

Next, Hale claims error based on the ALJ's credibility finding, specifically her determination that Hale's complaints about the frequency and intensity of his migraines, is not entirely credible. As described above, the ALJ discounted Hale's credibility based on (1) the fact that he has had migraines since childhood but still managed to attend school and work for some period of time; (2) the fact that he did not seek treatment even when he had insurance; and (3) the fact that there was no objective medical basis for worsening of his headaches. Hale offers valid criticisms for each.

First, he points to his testimony -- which the ALJ did not address -- that he missed work at Wal-Mart two to three days per month due to migraines, which is also consistent with his testimony that he was fired for taking too long of a break. Second, while there are certainly gaps in treatment (most notably from 2009 to 2012 when he did not have insurance), even then Hale sought emergency treatment (with fairly frequent ER and urgent care visits) for migraines. Moreover, while the ALJ criticized Hale for failing to seek

14

treatment, she also recounted the various medications he was on over the years to address his migraines. It is hard to reconcile her review of those medications with a finding that he failed to seek treatment, especially in light of the fact that for a significant portion of the relevant period, Hale lacked insurance. As for the third basis, it is not clear what objective medical evidence is missing (and the ALJ failed to provide examples) that would explain why his headaches have worsened, or otherwise corroborate his testimony about the frequency and severity of his headaches. *See Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (holding that an ALJ may not dismiss any complaints of pain solely on the ground that there is no diagnostic evidence to support it) (citing SSR 96-7p(4)).

In response, the government principally relies on the ALJ's findings discounting Hale's credibility as to his testimony regarding anxiety, panic attacks, agoraphobia, but that response does not address Hale's core challenge concerning the ALJ finding his accounts of migraines not entirely credible. Here, the ALJ failed to build an "accurate and logical bridge from the evidence to h[er] conclusion" that Hale's testimony about the extent and severity of his migraine headaches was not credible. *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015). On remand, the ALJ should reconsider his credibility assessment, explain her findings, and support them with citations to substantial evidence in the medical record.

IV. Treatment of Dr. Voelker's Opinion

Finally, Hale challenges the ALJ's decision placing little weight on Hale's treating physician Dr. Voelker's opinion, namely his conclusion that Hale would miss three to four days per month because of migraines. On judicial review, a court will uphold the

Commissioner's decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Crucial to review in this case, an ALJ is required to assign a treating source physician's opinion controlling weight, provided the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques[,]" and is "not inconsistent" with substantial evidence in the record. *Schaff v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *see also* 20 C.F.R. § 404.1527(c)(2). When an ALJ does not give a treating source controlling weight, the ALJ must consider the type, length and nature of the relationship, frequency of examination, specialty, tests performed, and consistency and supportability of the opinion. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); 20 C.F.R. § 404.1527(d)(2). An ALJ who rejects a treating source opinion must provide a sound explanation for doing so. *Jelinek*, 662 F.3d at 811.

In rejecting Voelker's opinion, the ALJ relied on the fact that Voelker's treatment relationship was "intermittent and involved little treatment for migraines," his opinion was "largely based on the claimant's subjective reports," and that Voelker's opinion is "not consistent with medical evidence, and his own treatment notes, and the nonmedical evidence, which shows a greater degree of functioning than outlined in Dr. Voelker's opinion." In defending the ALJ's assessment, the Commissioner primarily relies on the ALJ's credibility determination. Because the court has determined that the ALJ's credibility determination is flawed, the ALJ's assessment of Voelker's opinion is similarly in error.

Independent of the credibility determination, the ALJ fails to provide an adequate explanation as to how Voelker's opinion is inconsistent with medical evidence -- if anything, the medical record shows consistent complaints about migraines, including

16

repeat ER and urgent care visits. Moreover, the ALJ failed to explain how Voelker's assessment about missed work is inconsistent with his treatment notes. As Hale points out, the fact that he is able to engage in some activities does not undermine Voelker's opinion that he would have to miss work three to four times per day.

Accordingly, the court also finds error in the ALJ's placement of only little weight on Dr. Voelker's opinion, specifically his opinion about the frequency and severity of Hale's migraines and the limitations they place on his ability to work.

ORDER

Accordingly, IT IS ORDERED that the decision of defendant Nancy Berryhill, Acting Commissioner of Social Security, denying plaintiff Michael Hale's application for disability and supplemental income benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 21st day of September, 2017.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge